CUNNINGHAM et al. v. PARKER et al.

No. 15014.

Court of Civil Appeals of Texas. Fort Worth.

April 1, 1949.

Rehearing Denied April 29, 1949.

Nelson, Montgomery & Robertson and Lee Sellers, all of Wichita Falls, for appellants.

W. T. Link, of Clarendon, and King, Dawson & Jones and Arch Dawson, all of Wichita Falls, for appellees.

HALL, Justice.

The appellants herein, to wit, Joe Preston Cunningham, John Bedford Cunningham and Walter Henry Swain, sued the estate, the surviving wife and children of their former guardian, L. C. Parker, deceased, in a district court of Wichita County, Texas, for moneys wrongfully appropriated by the said L. C. Parker while acting as guardian of appellants, and to set aside a deed from the deceased guardian to his children as in fraud of appellants' rights as creditors of said deceased guardian's estate.

The undisputed evidence relates that L. C. Parker was appointed guardian of the estates of appellants Joe Preston Cunningham and John Bedford Cunnigham on or about April 7, 1919 and that he was removed as guardian of said estates on or about March 17, 1927; that said guardianship proceedings were then pending in the County Court of Roberts County, Texas; that no final account was ever filed by the said Parker; that there was a settlement made and entered into by and between his successor as guardian and his bondsmen, which will hereinafter be referred to.

That the said L. C. Parker was appointed guardian of the estate of appellant Walter Henry Swain on or about March 9, 1921 and that he continued to act as such guardian until he was removed by the court on or about August 31, 1927, that such guardianship proceedings were at that time pending in the County Court of Donley County, Texas, and that he never filed a final account in said estate upon his removal but that his bondsmen did make a settlement to his successor.

Appellants alleged in addition to the above undisputed facts that the said L. C. Parker as guardian of their estates misappropriated revenue belonging to their estates and applied the same for his own purposes and benefit as follows:

"(a) Proceeds from wheat crop harvested from the plaintiffs' land situated in Roberts County, Texas in the year 1919, a sum of at least $34,500.00;

"(b) Rent derived from the plaintiffs' property situated in Port Arthur, Jefferson County, Texas for the year 1919 through 1927 inclusive in the sum of at least $3,000.00;

"(c) Sale of oil and gas lease to J. E. Parker covering 315 acres out of Section No. 13, H & GN RR Co. Survey No. 13, Abstract No. 146 Wichita County, Texas in the year 1921 for the sum of $3,150.00;

"(d) Sale of oil and gas lease to Mrs. A. M. Armstrong covering 25 acres out of Section No. 13 H & GN RR Co. Survey No. 13, Abstract No. 146, Wichita County,

Texas in the year 1921 for the sum of $12,500.00;

"(e) Sale of right-of-way to Wichita County, Texas 3.7 acres out ov Block B, Tarrant County School Land in Wichita County, Texas in the year 1921 for the sum of $2,500.00;

"(f) Royalties from sale of oil produced on Section No. 13, H & GN RR Co. Survey No. 13, Abstract No. 146, Wichita County, Texas for the years 1919 through 1927 inclusive, $20,000.00."

Appellants further alleged that the said L. C. Parker as their guardian fraudulently and secretly leased for oil and gas certain lands owned by them for the sum of $3,150 to one J. E. Parker, when in truth and in fact said lease was worth $100,000, with the understanding that the said J. E. Parker would deliver one-half the proceeds from said lease to the said L. C. Parker. They further sued for ten per cent interest annually on the amount Parker did not invest and on the amount he converted to his own use and benefit.

Appellants further alleged that the said L. C. Parker conveyed to his children without consideration some 900 acres of land situated in Wichita County, Texas for the purpose of defrauding his creditors, especially appellants herein, to whom he was indebted. In their first trial amendment they denied having owed the sum of $2,315 to L. C. Parker for care, custody and control of appellants and for commissions paid him in the sum of $1,020.76. In the second trial amendment they sued for collection of money received by L. C. Parker from James E. Parker for one-half the profit made by James E. Parker on his sale of parts of or all of the 315 acre lease above enumerated in the sum of $21,225 and the collection of money, notes and interest on sale of a farm unaccounted for by L. C. Parker in the sum of $10,000.

The court's charge to the jury consists of 57 pages of the transcript; we will discuss the issues that are in point here. Suffice it to say, however, that all of the ultimate issues submitted relative to limitation were answered by the jury against appellants and in favor of appellees. The trial court's judgment includes 56 pages of the transcript and it is only necessary to state here at this time that said judgment was rendered against appellants and for appellees, to which action of the court appellants perfected this appeal, assigning as error ten points. They are briefly:

(1) Trial court erred in admitting in evidence defendants' exhibits known as 24 and 25 as "Kinney Audit."

(2) " * * * One of the attorneys for appellees was guilty of grossly improper conduct during his examination of the witness James E. Parker."

(3) Court erred in admitting in evidence copy of the chattel mortgage register of Roberts County, Texas pertaining to the claim of the White House Lumber Company.

(4) Trial court erred in submitting to the jury twelve special issues.

(5) The jury's answers to such twelve issues were wholly without support in the evidence.

(6) The court erred in submitting ten issues inquiring as to whether by the exercise of reasonable diligence appellants could and should have known of the misappropriation of such funds and property by L. C. Parker more than four years prior to July 29, 1947.

(7) That the jury's answers to such ten special issues were wholly without support in the evidence.

(8) The court erred in submitting special issue No. 41 inquiring as to what length of time after appellants became twenty-one by the exercise of reasonable diligence they could and should have known of the misappropriation of funds by L. C. Parker.

(9) That such answer of the jury was speculative and without support in the evidence.

(10) The jury's answers to eight issues were without support in the evidence.

Appellees' counterpoint A is that the judgment of the trial court was correct because the undisputed evidence shows appellants' cause of action was barred by limitation as plead by appellees. Counterpoint B is that the trial court's judgment is correct in that the undisputed evidence reveals that appellants' suit is a collateral attack upon an accounting by the County Court; and

filed many other counterpoints which are not necessary to discuss at this time.

In the same year 1927 that L. C. Parker was removed as guardian of the respective estates, Ethel Swain Parker was appointed guardian of the estate of appellant Walter Henry Swain, and Beulah Frances May was appointed guardian of appellants Cunninghams, and in said year both guardianships were moved to Wichita County and remained in said county until appellants became twenty-one years of age.

On or about March 22, 1928 the guardian of appellant Swain filed a petition in probate court to recover from the bondsmen of L. C. Parker the amount which he as former guardian owed appellant Walter Henry Swain; the guardian alleged in her petition that the books and accounts of L. C. Parker showed there was due from him to said estate the sum of $10,000, and that the sureties on said L. C. Parker's bond were ready and willing to pay to her as guardian such amount as might be due said estate by the said L. C. Parker in full and complete settlement of their liability as sureties on said bond. That a hearing was had on the petition and the order showed she collected the sum of $10,000 for the estate of appellant Swain. The same transaction took place in regard to the estates of appellants Cunninghams and the bondsmen of L. C. Parker were ordered to pay the sum of $24,407.40 to their estates. Both of these figures were ascertained by and through an audit made under the supervision of the court. Their respective acting guardians later showed in their annual reports that such sums were paid to them. There was no appeal taken from such orders.

The case at bar was filed July 29, 1947. Appellant Walter Henry Swain became twenty-one years of age December 7, 1939, and the Cunningham appellants, being twins, became of age March 31, 1933. The record further reflects that appellants waived citation upon the closing of their estates in the probate court shortly after they became twenty-one years of age.

In view of the last facts enumerated, we will discuss the limitation question first.

██ While it is generally true that limitation will not run in favor of a surety on a guardian's bond until a decree of court reflects that he has resigned, been removed or discharged, as set out in the case of Marlow et al. v. Lacy et al., 68 Tex. 154, 2 S.W. 52, or when a guardian files his final account if he is closing the estate, Hill v. Magee, Tex.Civ.App., 76 S.W.2d 579, writ refused, however, even though L. C. Parker was removed in 1927 and a settlement upon his bond for the amount due and owing by him on the respective estates was in 1928, yet it is not for us to decide here the question that appellants being minors, limitation would not start running until they became twenty-one years of age; but since L. C. Parker was removed by the court and settlement was made upon the amount the probate court found he owed, we do find that limitation started to run against appellants more than four years before this suit was filed under Article 5529, which is as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward." This statute of course only prevails in the absence of fraud; in such instances limitation will start running from the time when and if fraud is discovered unless in the exercise of reasonable diligence the alleged aggrieved party might have sooner discovered the fraud. Raley v. D. Sullivan & Co., Tex.Com.App., 207 S.W. 906; Texarkana Motor Co. v. Brashears, Tex.Civ. App., 37 S.W.2d 773.

██ The jury in this case answered issues propounded to them against appellants pertaining to the inquiry here, that is, they found appellants either acquired knowledge of such facts they were complaining of or by reasonable inquiry could have found such facts within four years after they became twenty-one years of age. The burden was upon appellants to not only prove the specific amount due them but also to prove that by the exercise of reasonable diligence they could not have found out the nature of fraud complained of within the four year period next succeeding

their majority. 28 Tex.Jur., p. 229, sec. 204. Sherman et ux. v. Sipper et al., 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263.

Since it is shown that appellants filed their law suit after the four year statute of limitation had run and since the jury found on every issue submitted to them pertaining to misappropriations that appellants could and should have known of such fraudulent misappropriations within the four year period, we find it unnecessary to discuss the points raised by appellants in their brief.

The judgment of the trial court is affirmed.