**Veva LA NEVE, Appellant,**

**v.**

**R. D. HINKSON et al., Appellees.**

**No. 3068.**

Court of Civil Appeals of Texas.

Eastland.

May 7, 1954.

Rehearing Denied June 4, 1954.

Marshall, King & Jennings, Graham, for appellant.

Geo. M. Ritchie, Creighton & Creighton, Mineral Wells, Brewster, Pannell, Leeton & Dean, Ft. Worth, for appellees.

COLLINGS, Justice.

This suit was brought on February 5, 1953, for reformation of an oil and gas lease on the ground of mutual mistake. Veva LaNeve, plaintiff in the action, was alleged to be one of the lessors in the oil and gas lease which was executed on April 19, 1935. Defendants, R. D. Hinkson and wife, Laura E. Hinkson, Pat F. Dalton and wife, Emma Clay Dalton, Esther Hartnett and husband, Leo J. Hartnett, were also lessors in the oil and gas lease, and defendants Ernest Loyd, J. B. Betts, P. J. Quinlivan, J. M. Denson and A. W. Johnson, were assignees of the oil and gas lease, insofar as it covers the tract of land involved in this suit. All defendants answered by general denial. Defendants R. J. Hinkson and wife and Pat F. Dalton and wife filed exceptions on the ground that plaintiff's petition showed on its face that the cause of action, if any, alleged therein was barred by the four year statute of limitations. The Hinkson and Dalton defendants also filed a motion for summary judgment which, after a hearing by the court, was granted. Veva LaNeve has appealed.

It was alleged in appellant's original petition that in the execution by her as one of the lessors of an oil and gas lease on three described tracts of land in Palo Pinto County on April 19, 1935, a mutual mistake was made by all parties in that the third tract of land described in said lease was intended to be, and should have been, another and different tract from the one described in the lease. Appellant alleged that she first received notice of such mistake less than a year before the filing of this suit and at all times prior thereto thought the lease covered the tract which she sought to have substituted in the lease.

Appellees, R. D. Hinkson and wife, and Pat F. Dalton and wife, excepted to the petition on the ground that it showed on its face that the cause of action sought to be recovered upon was barred by the four year statute of limitation.

Requests for admissions of fact were served on appellant and her answers thereto were made and filed.

On May 21, 1953, R. D. Hinkson and wife and Pat F. Dalton and wife, appellees, filed a motion for summary judgment on the alleged ground that appellant appeared from the pleadings and admissions made by her to have signed the oil and gas lease as a grantor in 1935; that no facts appeared to justify her in failing to bring suit until nearly 18 years after that date to reform the instrument on the ground of mutual mistake and that no facts appeared to prevent the running of the statute of limitation.

On June 12, 1953, appellant filed her supplemental petition, stating under oath that she knew of her personal knowledge that all allegations of fact contained therein were true and correct. On June 13, 1953, appellant filed her answer to the motion for summary judgment and alleged that there were issues of fact to be determined in the case, that is, whether she, appellant, (a) had notice of the mutual mistake more than four years before suit was brought, and if not, (b) whether she was negligent or lacking in reasonable diligence in failing to discover the mutual mistake and referred therein to the fact of the filing of her verified first supplemental.

According to the allegations of Veva LaNeve's sworn supplemental petition, the oil and gas lease in question, which was executed on April 19, 1935, covers three tracts of land, the first tract being 160 acres out of the Thos. Harrell Survey in Palo Pinto County, the second tract being 74 acres out of the same survey, and the third tract being 59½ acres of land described by metes and bounds out of the northwest part of the R. J. Kyle Survey. This third tract will hereafter be referred to as the LaNeve tract. It was alleged that the description of the third tract was erroneous and incorrect, and that as a result of a mutual mistake of the lessors and the lessee in said lease, the LaNeve tract was described and included in

the lease but that it was the intention of all the parties at the time the lease was executed to include and to describe as the third tract another and different 59½ acre tract of land out of the southeast part of the R. J. Kyle Survey. The last described 59½ acre tract will be referred to as the Hartnett tract.

tracts of land by definite names which were well-known and understood by the members of the family; that the first two tracts of land described in the oil and gas lease, that is, the 160 acre tract and the 74 acre tract out of the Harrell Survey, together with the Hartnett tract of 59½ acres, were all designated by and known

It was alleged that the above described tracts of land, as shown by the map, constitute a part of several thousand acres of land in Palo Pinto County and Jack County owned by A. A. Dalton during his lifetime, who, at his death, left as his sole heirs, his four children, Veva LaNeve and the defendants Laura Hinkson, Pat F. Dalton and Esther Hartnett. The heirs and their respective spouses were lessors in the oil and gas lease sought to be reformed.

Veva LaNeve further alleged that the Dalton family referred to their various

to the Dalton family as "the farm"; that the LaNeve tract was never considered as a part of "the farm"; that at the time of the execution of the lease in question, a ⅞ths interest in the oil, gas and other minerals on "the farm" was owned by Pat F. Dalton and wife and by R. D. Hinkson and wife, and the remaining ⅛th was owned by Laura Hinkson, Esther Hartnett, Pat F. Dalton and Veva LaNeve as heirs of their father, A. A. Dalton.

It was alleged in the sworn pleading that at the time the oil and gas lease in ques-

tion was executed, appellant Veva LaNeve, was living in Harrison County, Texas; that the lease was received through the mail by her and R. O. LaNeve who, at that time was her husband; that appellant was inexperienced in business matters and knew little or nothing about oil and gas leases, but it was represented to her at the lease covered "the farm", which had a definite meaning to her which meaning did not include the LaNeve tract; that defendant heirs owned practically all of the oil and gas and other minerals under "the farm," appellant's interest therein being only her proportionate part of the ⅛th that she and defendant heirs inherited from their father; that because of her small interest she did not feel that she should stand in the way of any transaction which defendant heirs desired to enter into in connection with leasing "the farm"; that in preparing and seeing to the execution of the oil and gas lease, defendants R. D. Hinkson and Pat F. Dalton, were in a position of trust to appellant and she relied upon their representations.

Appellant's sworn petition contained the further allegation that as a result of a partial partition of the A. A. Dalton lands, Pat F. Dalton, by a deed dated October 6, 1936, conveyed to Veva LaNeve and her sisters numerous tracts of land, including all of the Kyle Survey, and the two tracts above referred to out of the Harrell Survey, but reserved to Pat F. Dalton and R. D. Hinkson their undivided ⅞ths of the oil, gas and other minerals under "the farm"; that on March 18, 1937, Veva LaNeve and her sisters, by deeds, partitioned among themselves the A. A. Dalton land which they jointly owned by inheritance and by the deed from their brother, Pat F. Dalton; that under these partition deeds of October 6, 1936, and March 18, 1937, Esther Hartnett acquired title to the surface of "the farm" and the undivided ⅛th interest in the oil and gas and other minerals therein formerly owned by A. A. Dalton, but subject to the right of her sisters to receive one-half of ⅛th of the bonuses, rentals and royalty derived

from oil and gas leases thereon. Veva LaNeve also acquired title to portions of the land by reason of the partition deeds, including the northwest 59½ acre tract of the Kyle Survey which is referred to as the LaNeve tract. Her title thereto, however, was subject to the right of her sisters to receive one-half of the bonuses, rentals and royalty from oil and gas leases thereon. Each sister was given exclusive authority to execute oil and gas leases on the tracts to which they acquired title to the surface. Since March 18, 1937, Veva LaNeve has either lived on or been in possession of the land to which she acquired title by the partition deed of that date.

During the primary term of the oil and gas lease in question, production was obtained from drilling operations on "the farm" which continues in paying quantities until the present time but not on either 59½ acre tract. All royalty owners, including Veve LaNeve, have signed division orders furnished by pipe line companies upon purchase of the oil being produced on the lease. It was alleged that such division orders divided the royalty in accordance with the ownership of the oil, gas and other minerals under "the farm", and payments were made accordingly.

Appellant Veva LaNeve alleged that until May, 1952, all operations under the oil and gas lease were conducted on "the farm" and that her possession of the LaNeve tract was never disturbed or questioned and that she had no knowledge or information that the oil and gas lease actually covered such tract; that in May, 1952, appellant was informed by her sister, Laura Hinkson, that preparations were being made to drill an oil well on the LaNeve tract, and after consulting with her attorney, immediately, by means of a letter, appellant advised Ernest Loyd, the operator of the lease, that he was on the wrong tract of land and had no right to drill on the LaNeve tract.

After an investigation of the matter, by which appellant discovered that the oil and gas lease in question did not, as she had thought, cover the 59½ acre Hartnett tract, which was a part of "the farm",

but covered the LaNeve tract, she prepared a correction instrument, which included the Hartnett 59½ acre tract as the third tract covered by the lease and excluded the LaNeve 59½ acre tract, and submitted it to the defendant heirs and their spouses but they refused to sign such instrument and thereby carry out the original intention of the parties.

One point is urged by appellant, Veva LaNeve. She contends that the court erred in entering the summary judgment because there is a genuine issue of fact on whether she failed to use reasonable diligence to discover the mutual mistake more than four years before the filing of her suit. The purpose of Rule 166–A, Texas Rules of Civil Procedure, providing for the rendition of summary judgments, is to expedite the disposition of cases in which there are no material issues of fact. It is useful as a time-saving device but should be cautiously invoked.

We take it to be unquestioned that where there is an allegation of fraud or mistake and the statute of limitation has been plead, the one making such allegation must prove that due diligence was exercised to detect same, to avoid the running of the statute. 28 Tex.Jur., 299; 36 Tex.Jur., 765. As stated by Judge Sharp in the case of Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 321, " * * * fraud will prevent the running of a statute of limitation only until such time as the fraud is discovered, or by the exercise of reasonable diligence it might have been discovered." See also Cunningham v. Parker, Tex.Civ.App., 219 S.W.2d 698 (Err. Ref.).

Appellees contend that there is no genuine issue of fact because neither the pleadings on the motion for summary judgment nor any competent evidence by affidavit or otherwise show any facts which would tend to excuse appellant from knowing or ascertaining the fact of the alleged mutual mistake more than four years before she filed suit or to negative the rule that she was charged with knowledge of the contents of the oil and gas lease when she executed it, and also when she acquired title to the surface by the partition deeds in question executed in 1936 and 1937.

As a general proposition, one who executes an instrument is charged with knowledge of its contents and limitations begin to run from the time of its execution and one who acquires title to land by a deed is charged with notice of all instruments included in his chain of title, and the statute of limitation begins to run from the time he acquired title. Kennedy v. Brown, Tex.Civ.App., 113 S.W.2d 1018; Kahanek v. Kahanek, Tex.Civ.App., 192 S.W.2d 174. It is also well settled, however, that where the grantee, in an instrument in which land was included by mutual mistake of the parties, had said or done anything which would lull the grantor to sleep, limitation will not begin to run against the grantor until he discovers, or should have discovered, the mistake. Hutchins v. Birdsong, Tex.Civ.App., 258 S.W.2d 218, 222 (RNRE).

The claimed facts and circumstances which appellant says were sufficient to, and did, lull her to sleep and thereby excuse her failure to sooner discover the mutual mistake were: (1) that appellees, Pat F. Dalton and R. D. Hinkson, were responsible for the preparation of the lease in question and that appellant had nothing to do with it; (2) that such appellees represented to appellant that the oil and gas lease covered land known to the parties as "the farm" and that appellant relied upon such representations; (3) that until May of 1952, all operations under the lease had been conducted on "the farm", which fact was consistent with the representations made to her by such appellees and tended to lull her into a sense of security; (4) that all division orders signed by appellant and other royalty owners showed the division of royalty to be in accord with the ownership of the minerals under "the farm."

Appellant's supplemental petition was under oath, stating that she knew of her own personal knowledge that all allegations of fact contained therein were true and cor

rect. It was alleged in such supplemental petition that "In preparing and seeing to the execution of the original oil and gas lease, defendants R. D. Hinkson and Pat F. Dalton were in a position of trust to plaintiff and she relied upon their representation and upon their honesty, integrity and fairness to see that the oil and gas lease was in all things proper."

It was also alleged in the supplemental petition that appellant, prior to the execution of the lease in question, received the same through the mail "and it was represented—as being a lease on 'the farm.'"

These sworn allegations, together with the additional allegations that all operations and production on the lease prior to May of 1952 were on "the farm," and that all division orders showed the division of royalty to be in accord with the ownership of minerals under "the farm" constitute the sole evidence relied upon by appellant to raise an issue of fact as to whether appellant used reasonable diligence to discover the mutual mistake more than four years before her suit was filed. Assuming, without deciding, that the sworn pleadings by appellant occupy the same position as an affidavit in summary judgment cases and may be considered as evidence to raise a fact issue, which the burden rested upon her to show, we are of the opinion that the issue is not raised. There is no allegation whatever that the lessee in the oil and gas lease did or said anything to mislead appellant. Appellant's sworn pleading is that "It was represented—as being a lease on 'the farm.'" She does not say who made the representations. If such a representation by the appellees who were joint grantors would have excused her failure to know about the mistake, she, nevertheless, failed to make any such specific allegation concerning them. Other language implies, but does not actually state, that R. D. Hinkson and Pat F. Dalton misled her. She alleges that "In preparing and seeing to the execution" of the oil and gas lease, Dalton and Hinkson were in a position of trust, but the pleading does not state that Dalton and Hinkson represented to her that the lease was on "the farm." It states that she relied upon "their representation and upon their honesty" but does not state what they represented to her.

 In our opinion, appellant's sworn pleading, considered as evidence, does not show that either the lessee in the oil and gas lease or appellees, who were joint lessors with her, represented to appellant that the oil and gas lease covered the land known to the heirs as "the farm." Appellant has failed to show that she was lulled to sleep by the lessee in the questioned oil and gas lease, or by anyone representing him. If the fact of being misled by the joint lessors Hinkson and Dalton should be held to excuse appellant from discovering the alleged mistake, she has also failed to make such showing concerning them. She has failed to bring herself within the exception or the rule in the case of Hutchins v. Birdsong, supra, so as to prevent the running of the statute of limitation.

The judgment of the trial court is affirmed.

GRISSOM, C. J., and LONG, J., concur.