William BIRDWELL et al., Appellants,

v.

AMERICAN BONDING COMPANY et al., Appellees.

William BIRDWELL et al., Appellants,

v.

A. B. LARIMORE et al., Appellees.

No. 16104.

Court of Civil Appeals of Texas.

Fort Worth.

May 27, 1960.

Rehearing Denied June 24, 1960.

Sidney E. Dawson and Walter L. Wray, Dallas, for appellants.

Jennings & Montgomery, and Frank Jennings, Graham, for appellees American Bonding Company and American Surety Company.

Henry B. Penix, Wichita Falls, for appellee Harry C. Weeks.

Thornton & Thornton and E. G. Thornton, Olney, for appellee A. B. Larimore.

MASSEY, Chief Justice.

The cases before us on appeal were consolidated by order entered in the District Court, Young County, Texas, and considered together at one hearing, following which a single judgment was entered.

In view of the fact that we have reached the conclusion that the judgment of the trial court was erroneous in one case and correct in the other we have concluded that convenience in handling requires severance for purposes of judgment by this court. Convenience of discussion in the opinion, however, will be upon all phases of both cases, with distinctions to be made indicated where necessary.

William Birdwell and his sister, Lee Birdwell Green, were plaintiffs in both cases. While they were minors they inherited an interest in the estate of a grandfather. Such condition necessitated the appointment of a guardian of their estate(s). Their father, G. W. Birdwell, applied for and was duly appointed guardian of the persons and estates of said minors by order of the Probate Court of Bell County, Texas, dated August 15, 1906. At the time, William Birdwell was three years of age and Lee Birdwell was nine years of age. Said guardian tendered and had approved a general guardian's bond in the sum of $3,000, upon which bond two individuals of Bell County were the sureties. Said bond was filed of record in the Probate Court of Bell County. Subsequently, said sureties were ordered released as such and a new bond was tendered and approved by the guardian, on which the American Bonding Company of Baltimore was the surety. The amount of the bond was unchanged. The effective date of the bond was October 9, 1909. Said bond was filed of record in the Probate Court of Bell County. The

bond was a general guardian's bond and not a sale bond.

Within three months following the date American Bonding Company became the surety, the guardian, pursuant to authority of the Probate Court, proceeded to effect a sale of the interest in real estate owned by the minors. About the same time their guardian applied to the court for an allowance of $100 per year for *each* of the minors for use in their support, education and maintenance. Incident to this application the guardian represented that he was not financially able to support, educate and maintain the plaintiffs. An order was entered on January 10, 1910, granting the application, with the further provision in the order that " * * * this order shall be in force and effect until otherwise ordered."

On or prior to March 5, 1910, the American Bonding Company filed application that the guardian be required to give a new bond, and that it be discharged from all liability for future acts of the guardian (G. W. Birdwell), " * * * as provided for by Articles 1952 et seq. and 2608 of Sayles' Texas Civil Statutes."[1] The guardian waived issuance and service of citation upon the application. On date of April 4, 1910, order of the court was entered requiring the guardian to " * * * give a new bond in the amount of Three Thousand dollars, on or before the 20 day of April, 1910, with surety or sureties to be approved by this Court."

On October 17, 1910, the guardian filed application for the removal of the proceedings in guardianship to Young County, Texas, to which county he had moved with the intention of permanently residing thereat. Representations in the application were: " * * * he (petitioner) is still the duly qualified and acting Guardian * * *; that he is still keeping and maintaining said minors and is able, ready and willing to continue to provide for the education, maintenance and support of said Mi-

nors; * * * he is able to and will make a good and sufficient bond as the law directs, as such guardian in this county of Young; * * * your applicant for removal of his said guardianship is in no way disqualified and is a proper person to still act as guardian of the persons and estate of said minors."

There appears to be no order in the minutes of the Probate Court of Bell County, Texas acting upon the application for removal of the guardianship to Young County, but obviously it was so removed, for in August of 1913 the matter of the Guardianship of said minors was on the docket as No. 436 in the County Court of Young County. The record before the trial court (District Court) from which the appeal before us was taken contained a certificate of the County Clerk of Bell County, dated December 21, 1955, to the effect that said clerk had made a thorough check of the index and records of the guardianship, as same then existed in Bell County, and had reason to believe the transcript was complete. Neither does there appear in the records any matter relative to the American Bonding Company bond, following the Order of March 5, 1910 (when the guardian was ordered to give a new bond on or before April 20, 1910). The representations in the application for the transfer of the Guardianship are of course those of the guardian himself. It is to be observed that we cannot affirmatively know from the state of the aforesaid records, in themselves, that the American Bonding Company was released as a surety on or before April 20, 1910,—or afterward but before October 17, 1910, when application for the transfer to Young County was made,—or afterward but before the first mention of the Guardianship appears of record in the Probate Court of Young County.

We do know that on August 19, 1911, the said minors (through certain construction to be made, propriety of which is not a matter at issue between the parties) received

1. Now V.A.T.S. Probate Code, §§ 33, 206, 207, 209, 210, 218.

title to all the surface and three-fourths the minerals thereunder in and to a certain 80 acre tract of land in the shape of a square in Young County and being in the northwest corner of T. E. & L. Co. Survey No. 2250. The grantor in said deed effectively "severed" the one-fourth interest in the minerals under the land by a "reservation" of them out of the transfer effected by the grant. The three-fourths of the minerals which did pass to the plaintiffs, then minors, perforce the provisions of the instrument of conveyance, were *not* "severed" from the surface which was conveyed to them, as will be later commented upon in this opinion.

On August 27, 1913, the guardian, G. W. Birdwell, filed an application in the Probate Court of Young County, Texas to sell the same land received under the deed of August 19, 1911. The sworn application recited that " * * * all of the personal estate of said wards has been exhausted and the proceeds of said sale are insufficient to maintain said wards. * * * Your applicant would further represent and show to the court that it would be most advantageous to sell said land at private sale partly for cash and partly on time."

On August 16, 1913, the guardian executed, along with American Surety Company of New York, surety, a bond in the form of a general guardian's bond in the sum of $2,500. Same was approved by the County Judge of Young County on the same date, and was filed for record with the County Clerk. Whether there was or was not any record in the Young County Probate Court of any earlier bond in the Guardianship proceedings is not shown by any certificate of the custodian of said records. The record does not reflect the date when the Probate Court of Young County took jurisdiction of the guardianship in question, under its No. 436. There does not appear in the record made below any Order requiring a new general guardian's bond. It is worthy of note that the bond with American Surety Company as surety, was on file for eleven (11) days before the date of August 27, 1913, when the guardian's application to sell real estate was filed.

On October 13, 1913, the application aforementioned, to sell real estate, was heard and the court in its Order stated that " * * * it further appearing to the court that said land ought to be sold for part cash and part on time * * * and that it is necessary that the same should be sold for the support and maintenance of said wards." The Order entered directed that the guardian sell the land in question at a private sale " * * * on such terms as he can obtain and that he make his report of such sale * * * in accordance with the law." On the same date as the Order the guardian made the sale of the land in question to J. M. Kirkland at private sale. On October 20, 1913, the court entered an order approving and confirming the sale and directing that it be recorded by the clerk, and that the guardian make proper conveyance of the land in question to J. M. Kirkland upon his (Kirkland's) compliance with the terms of the sale, set out as being for the total amount of " * * * $2,000.00 of which $512.50 was cash and the balance as follows: the assumption of one mortgage for $800.00 held by the Bonnors of Dallas Texas and one note for $200.00 due Oct. 15, 1915, one note for $200.00 due Oct. 15, 1916, and one note for the sum of $287.50 due Oct. 15, 1917 * * *." It appears that the mortgage which was provided to be assumed was security for the payment of notes which exceeded said $800 assumed in connection with the guardian's purchase of the land on August 19, 1911.

It might be well to here note that in a deposition given by J. M. Kirkland on March 18, 1955, said deponent, in answer to an interrogatory inquiring whether any part of the $512.50 "cash" consideration for the conveyance aforementioned (under Order of the Probate Court of Young County) was "in livestock", stated that it was. By other answers said deponent stated that the "livestock" part of the "cash" consideration was "one mare named 'Ann' and one 'stal-

lion'". Further, that the mare and stallion were delivered to the guardian, G. W. Birdwell, on August 1, 1913, which was about two and one-half months prior to the Order of the Probate Court authorizing the sale. Further, that the agreed valuation of the "livestock" part of the "cash" consideration was $400.

On March 1, 1915, a little more than a year and one-half after the American Surety Company became bound on the bond filed in the Probate Court on August 16, 1913, said bonding company filed an application in said court for a release. The application for release was heard on July 13, 1915, and pursuant thereto the order entered by the court recited: "It is therefore ordered, adjudged and decreed by the court that The American Surety Company of New York be and they are hereby discharged from all further liability on said bond by virtue thereof and that the said G. W. Birdwell be required to file another good and sufficient bond in this court as required by law." The Order was filed for record on July 15, 1915.

From July 15, 1915, when the County Clerk of Young County filed the Order, until February 25, 1955, when plaintiffs' attorneys filed an application under the same number (No. 436, in the Probate Court) to perpetuate J. M. Kirkland's testimony in deposition (answers to which were given by Kirkland as previously indicated), it may be that nothing whatever appears of record in said cause under said number. However, there is no certificate from the official custodian of said records, and of course it may or may not be a fact that a new bond was actually filed by G. W. Birdwell, guardian, in obedience to the direction of the Order entered July 13, 1915.

In the controverting affidavit to the Motion for Summary Judgment filed in behalf of the American Bonding Company and the American Surety Company one of the attorneys representing the plaintiffs stated that neither the Probate Court of Bell County nor the Probate Court of Young County ever entered any order " * * * releasing said American Bonding Company of Baltimore, and no order to that effect was entered upon the minutes of the court releasing the sureties or surety as is required by Art. 3399." [2] Further, the lawyer making the affidavit assumed that after the alleged "unlawful" release from liability of the American Surety Company by the Order of July 13, 1915, the guardian never did file any new bond and that therefore said bond remained in effect. A companion affidavit by Lee Birdwell Green, one of the plaintiffs, states that G. W. Birdwell, her father, the guardian, died on June 17, 1951. Further, the affidavit was to the effect that he, the said guardian, *advised* the plaintiffs (at a time not specified) that they would receive their interest (unspecified) in the land and also that plaintiffs relied upon their said guardian to "make restitution" of their inheritance other than the land.

In the first part of 1955 plaintiffs filed a case in the nature of Bill of Review in the Probate Court of Young County against the American Bonding Company and the American Surety Company of New York, herein sometimes referred to only as the bonding companies. By their suit they sought to obtain judgment of the court that the bond of the American Bonding Company was a general guardian's bond; that the bond of the American Surety Company was a sale bond other than and in addition to the other bond; that the approval and filing of the latter bond did not release the obligation under the former; that the Order purporting to release from further liability the American Surety Company on its bond was void and ineffective because of a want of authority of the court to release the same; that both bonds, and in any event the latter bond (even if it could be considered a general guardian's bond), were in effect until the plaintiffs reached maturity if not afterward; that their father and guardian necessarily received and converted on or about August 1, 1913 the

2. Now V.A.T.S. Probate Code, § 209.

"livestock" delivered by J. M. Kirkland and agreed as to value between him and Kirkland at $400, in the stead of $400 in cash delivered to the estate; that $400 of the "cash" for which the court's Order of October 13, 1913 directed the guardian to receive for the benefit of their estate, and Kirkland to pay as the "cash" part of the consideration for the sale of the real estate for the estate of the plaintiffs, was not so delivered and paid nor received and collected; and that the plaintiffs' Guardianship Estate never did receive the benefit of said $400 directed by said Order to be so received.

Further irregularity plaintiffs seek to establish as against the American Surety Company (certainly the surety on the guardian's bond between dates of August 16, 1913, and July 13, 1915, and contended by the plaintiffs to have thereafter continued as surety on said bond) lies in their further contention that "because their father, as their guardian, decided to and did on December 7, 1914, sell notes totaling $400.00 ($200.00 of which was due October 15, 1915, and $200.00 of which was due October 15, 1916), and decided to and did on March 13, 1917, sell the note due October 15, 1917, in the sum of $287.50, rather than waiting to maturity date, he necessarily breached the faithful performance of his duty to his wards, the plaintiffs while they were his minor children, and legally must be considered to have converted the amounts which were or should have been realized to the benefit of the guardianship estate."

The plaintiffs failed to get any part of the judgment they desired in the Probate Court of Young County, and from the judgment adverse to them therein entered they appealed to the District Court of Young County. Theretofore they had filed their suit in said court in the nature of Trespass to Try Title against J. M. Kirkland and all those persons by and through him who appeared in the chain of title to the real estate acquired by him under the Guardian's deed of October 20, 1913, and said cause of action pended on the docket of the court.

The trial court (District Court of Young County) consolidated the two causes of action for purposes of consideration of all preliminary matters and for pretrial, for consideration of the exceptions of the parties, including the plea of the bonding companies of the four-year statute of limitation by exception, their Motion for Summary Judgment under the same statute of limitation and under other allegations of their pleadings and said motion and the evidence proper to be considered thereupon,— and including the exceptions of all the defendants to the plaintiffs' suit in the nature of Trespass to Try Title upon all the statutes of limitation applicable thereto, including the twenty-five year statute of limitation.

Following said hearing, by a single judgment the trial court disposed of all phases of the case. The judgment, in so far as it pertains to the cause of action against the bonding companies, is proper to be treated as having been a Summary Judgment entered in behalf of said companies and against the plaintiffs. The judgment, in so far as it pertains to the cause of action upon the title to real estate, may not be so treated because the defendants to said action did not have any Motion for Summary Judgment, having at said preliminary hearing elected to raise the issue of limitation title by exceptions only. Therefore the judgment of the trial court as related to the plaintiffs' suit upon title to real estate must necessarily be treated as one wherein the trial court sustained said exceptions, thus leaving the pleadings of the plaintiffs in such condition that they did not state a cause of action, and, upon plaintiffs' refusal to amend their pleadings to meet the exceptions so sustained, the court's judgment was one which dismissed their suit.

█ The state of the record, considered as on the bonding companies' Motion for Summary Judgment, renders it proper to

presume not only that the plaintiffs did, as of the respective dates on which they reached their majorities and ceased to be minors, know that their father had been their guardian and that the administration of their estates in Guardianship had been had in Bell and Young Counties, but furthermore that the plaintiffs were on notice as of the respective dates they reached their majorities, of the condition of the judicial records relative to their affairs when they were minors and their father was their guardian. Therefore, the presumption to be recognized is that plaintiffs knew at a time more than twenty-five (25) years prior to the time they filed suit by Bill of Review in the County Court of Young County, Texas, that on July 13, 1915, an Order was entered purporting to discharge the American Surety Company for actions of their guardian subsequent to said date. This action of the Probate Court of Young County is to be presumed to have been rightly done, and to have properly discharged the American Surety Company from liability thereafter accruing to G. W. Birdwell, guardian, because of any act committed by him, and even to have been ordered coincidental to the act of G. W. Birdwell, guardian, in furnishing another good and sufficient bond in the stead of that of the American Surety Company. McCormick and Ray, Texas Law of Evidence, 1937 Edition, p. 101 "Burden of Proof and Presumptions", sec. 57, "Judicial Proceedings" (1956 Edition, p. 127, sec. 98). Hence, all the actions of G. W. Birdwell, guardian, subsequent to date of his purported discharge, July 13, 1915, would be treated as the liability of said guardian and ·some other unidentified surety company, or sureties, *the presumption mentioned not having been rebutted by legal evidence,* and the matter of the subsequent sale of the notes before due date, and alleged conversion of the proceeds, ceases to constitute matter with which we must concern ourselves.

█ There is left, however, the matter of the "livestock" which G. W. Birdwell

did receive on or about August 1, 1913, in the place and stead of $400 cash, and the matter of the $400 which was not received by the guardian, or paid by J. M. Kirkland pursuant to and as directed by Order of the Court, dated October 13, 1913. It must be remembered that it is not affirmatively shown that the American Bonding Company had been discharged from liability as a surety on the bond made in Bell County on and prior to date of August 1, 1913, when the "livestock" changed hands, but, under the state of the statutes, etc., when the American Surety Company became a surety on the guardian's bond on August 16, 1913, the said bond became a "new bond" upon approval by the Probate Court as a general guardian's bond, and its acceptance would have operated as a "discharge from further liability" of the American Bonding Company, even if it properly be presumed that it had not theretofore been so discharged. The plaintiffs contend that the bond of the American Surety Company was a sale bond and not a general Guardian's Bond, but in the application of tests to the same, which was in form the latter character of bond, we are not left in doubt that its true character was that of a general Guardian's Bond. Such it was, and when it was approved and ordered filed, the American Bonding Company was effectively discharged in view of the state of the statutory law effective at the time, even if we assume that liability thereunder was not earlier terminated.

Records before us, proper to be considered on the bonding companies' Motion for Summary Judgment, reflect that G. W. Birdwell, guardian, and J. M. Kirkland, the purchaser of the land in question simply were ignorant of the law on or about date of August 1, 1913, when they initially attempted to transfer title. Not long afterward they learned that the purported instrument by which they had attempted to consummate the transaction was absolutely void, and of no force and effect and subject to collateral attack. Necessarily, they proceeded to effect the same transaction in

a proper manner, and this they did effectively accomplish, except, perhaps, for the matter of the "livestock" transfer, rather than the $400.00 "cash". The time of the transaction would only be properly considered as of the date when the parties were ordered to consummate the sale transaction, and this was subsequent to the effective date of the bond on which the American Surety Company was the surety, so only said bonding company would have been involved, and the American Bonding Company would not be involved in any event.

We may therefore, for the purposes of continued discussion, assume that the guardian, G. W. Birdwell, should have received for the benefit of the plaintiffs the sum of $400 cash incident to the transaction of conveyance, but did not, and he was therefore from said time accountable to the estates of said minors in the sum of $400 cash, plus interest, and that the American Surety Company, as surety and in view of the derivative liability, stood liable along with the guardian because thereof. So, as of the time the respective plaintiffs reached the age of majority their guardian owed and was accountable for the said sum of $400 plus interest. The period during which the plaintiffs should have filed their suit therefor was within four years after they reached their respective majorities, the four-year statute of limitation being applicable.

When plaintiffs did file suit their claim was promptly met with proper pleas of limitation. These pleas were met by responsive pleadings on behalf of the plaintiffs wherein they alleged that Kirkland and their guardian had defrauded them in a transaction and had concealed the truth relative thereto. The pleadings made this an issue and also made an issue upon the matter of the diligence of the plaintiffs relative to discovery of such fraud and action thereupon subsequently taken.

As applied to the plaintiffs' case in Trespass to Try Title to realty, we are of the opinion that the trial court erred in sustaining the defendants' exceptions that plaintiffs' cause of action was barred by limitation. Where it does not affirmatively appear from the face of the petition that plaintiffs' asserted cause of action is barred by limitation defendants may not prevail by exception. 28 Tex.Jur., p. 292, "Limitation of Actions", sec. 198, "Necessity that Bar Appear from Pleadings." In such instances the matter of limitation is determinable as a question of law. Where limitation is raised by plea and it does not affirmatively appear from the face of the petition that the cause of action is barred it is proper to receive evidence and the question of limitation is often one of fact upon issues made by the pleadings and evidence. However, a verdict may be directed where the evidence conclusively shows that the cause of action has been lost by limitation. Thus, unless the evidence is such that reasonable minds may not differ as to its effect, the question as to whether a party has exercised diligence in discovering fraud or mistake is for the jury. 28 Tex.Jur., p. 301, "Limitation of Actions", sec. 207, "Questions of Law and Fact".

It is proper to hear evidence, as upon the merits, where the matter of limitation is not determinable upon the pleadings alone. In such an instance it is also proper to resolve the question of limitation against the party to whose action the plea was directed in the event the evidence shows conclusively that the cause of action has been lost by limitation. The matter may be likewise resolved upon a hearing of a defendant's Motion for Summary Judgment during the course of which is demonstrated the application of the limitation statute plead, in the absence of any avoidance by him against whom it is plead. At such stage of summary judgment proceedings a plaintiff is burdened with the obligation to show that he has receivable evidence to justify his delay, else there would be a complete failure by him to raise an issue thereon. In other words, we are of the

opinion that a defendant is entitled to prevail in his motion for summary judgment based upon demonstration that the claim is barred by the affirmative defense of limitation in the absence of the plaintiff's ability to explain and excuse his delay by discharging his correlative burden (shifted to him as the result of the proof by the defendant) of specifying some evidence which would change the result otherwise undoubtedly achieved by the defendant as the moving party. McDonald, Texas Civil Practice, "Judgments", sec. 17.26.1 "(Summary Judgments)—B. When Summary Judgment Proper"; LeMond and Kreager's article on "The Scope of Pleading as Proof in Summary Judgment Procedure", 30 Tex. Law Review, pp. 613–619.

 We are of the opinion that the trial court did not err in granting the defendant bonding companies a summary judgment. This opinion was arrived at by application of the principle above stated. Although the pleadings of the plaintiffs were construable as having presented an explanation and excuse for not having brought and prosecuted their suit within four years after they reached their majorities, in that they alleged that the parties chargeable with fraud had concealed the truth from them, the plaintiffs were obliged to do more than merely plead when the same limitation matter was presented to the court by a Motion for Summary Judgment. Plaintiffs were obliged upon such a hearing to show that there existed some character of proof in their behalf that there was fraud, which was concealed, the discovery of the truth, and action taken after such discovery within the limitation period. In the absence of such a showing by plaintiffs they were, for all practical purposes, in the same position as they would have been upon a jury trial where the state of the evidence introduced was in the same condition. On such a jury trial it would be proper for a verdict to be instructed against plaintiffs on the defense of limitation. It is proper, therefore, that a summary judgment be rendered against plaintiffs on such defense where the state of the record is not to be distinguished at the time all the evidence proper to be considered is before the trial court and time for action on such a motion for judgment is reached.

When we examine the record to determine what evidence there was upon the matter of plaintiffs' explanation and justification of their delay in filing their suit in the nature of a Bill of Review in the Probate Court of Young County, we find the following: (1) At some undetermined date the plaintiffs either discovered or had reason to suspect that their guardian had not received $400 in "cash" that he should have received as part of the consideration for the sale of realty belonging to the plaintiffs, while they were minors, but instead wilfully retained and converted property of an agreed value of $400 which had been delivered to him at an earlier date by the purchaser of the plaintiffs' realty. Such date was before February 25, 1955, for on said date the interrogatories desired by plaintiffs to be propounded to J. M. Kirkland to perpetuate his testimony were filed in the Young County Probate Court, and questions framed therein by the plaintiffs inquired whether their guardian did not, in fact, receive "one mare named 'Ann' and one 'stallion'" on August 1, 1913, prior to date of the authorized sale of the plaintiffs' real estate, and did not, in fact, treat the earlier transfer of said livestock as though it was $400 in "cash" which changed hands pursuant to accomplishment of the authorized sale of the real estate, under court Order, at a later date during the year. (2) One of the plaintiffs made affidavit that neither plaintiff ever received any sum of money from their guardian in payment of their interests in their estate in Guardianship, but that they "relied upon him to make restitution of our inheritance, and believed, and he so advised that we would receive our interest in the land." (3) One of the attorneys for the plaintiffs made affidavit that he was familiar with the state of the Probate Rec-

ords in Bell and Young Counties, and stated some matters relative thereto, but *coupled* therewith matters of conclusion on his part (which would not be evidence). (4) The records relative to the land, and the complete records relative to the matter in question from the Probate Court of Bell County, Texas, and certain of the records out of the Probate Court of Young County, Texas, relative to the administration of the Guardianship in question.

■ For all that is shown which might be considered in behalf of the plaintiffs upon the matter of limitation considered on the hearing of the bonding companies' Motion for Summary Judgment the court was entitled to treat the case as one wherein the plaintiffs knew from the dates on which they reached their respective majorities that their estate never did receive $400 of the "cash" which should have been delivered to it (through its guardian) by the purchaser of their real estate in 1913. The contrary was not shown in the evidence plaintiffs put before the court on the summary judgment proceedings. The court was further entitled to treat the case as one wherein the plaintiffs admittedly received nothing from their estates upon attaining their respective majorities, with their guardian promising from that time to make "restitution" to them for cash and/or personal property that he did not have to deliver to them (on account of his waste or conversion thereof), and with knowledge from that time that they had received no "restitution" until the time the guardian died in 1951, over twenty-five years later. Such would have included the $400 in question, for it was not realty. The court need not have considered anything about the land, or the plaintiffs' "interest" in any land, for as applied to the bonding companies' Motion for Summary Judgment such would not have been involved. It would be presumed that the court did not consider such.

Giving the plaintiffs the benefit of every reasonable inference which properly could be drawn in favor of their position, we believe that it is nevertheless conclusively shown that their cause of action against the bonding companies has been lost by limitation. Such is conclusively shown once it is observed that plaintiffs did not specify any evidence under their pleadings which would change the bonding companies' right to have their limitation plea sustained, which right was undoubtedly achieved by the discharge of unrebutted proof establishing the defense.

■ As previously indicated, we have reached the conclusion that the judgment in the plaintiffs' case upon title to real estate must be reversed in that their (the plaintiffs') pleadings asserting fraud upon them, preventing earlier discovery that they had any cause of action prior to January, 1955 (within less than a year of which date plaintiffs' suit was filed), raise issues including an issue upon their diligence upon which they would be entitled to a trial before any of the statutes of limitation plead against them could be properly sustained. It is noted, however, that a strong contention is made to the effect that even in the event plaintiffs must lose on their claim to the surface of the real estate because of the pleading (and proof) of the applicability of said limitation statutes, their claim would nevertheless be good as to their previously owned three-fourths of the mineral estate and not subject to the same statutes, as the result of the fact that the mineral estate had been severed from the surface estate, whereby application of the principles of limitation statutes to severed mineral estates is improper except where there is open and obvious adverse possession of the mineral estate.

■ Lest any retrial proceed on the theory asserted by the plaintiffs, we believe it well to point out that the matter is clarified and settled to the contrary of the contention of the plaintiffs by the case of Thomas v. Southwestern Settlement & Development Co., 1939, 132 Tex. 413, 123 S. W.2d 290, by Judge Smedley, answering

questions certified from the Ninth Supreme Judicial District. Until any particular fractional or percentage interest of the mineral estate has been initially vested (through grant or reservation) in one other than the owner or owners of the surface estate said interest in the mineral estate is not to be treated as having been "severed" from the surface estate. Therefore, if a grantor owns the surface estate and a fractional interest in the mineral interest underlying the same which has never been severed, as through grant or reservation, his ownership is to an entire estate unsevered. Such was the estate received by the Guardianship estate of the plaintiffs for the three-fourths mineral interest they received, along with the whole of the surface of the 80 acre tract of land, had never been "severed" from said surface.

 Grant of such "unsevered" estates delivers the same to a grantee, whose adverse possession of the surface extends to and includes an adverse possession of the mineral interest thereunder which had never been separated or severed from the surface estate, and where such adverse possession sets the limitation statutes in motion so as effectively to mature title to the surface estate in a claimant, said statutes are likewise in motion so as effectively to mature title to the unsevered mineral estate thereunder. Rio Bravo Oil Co. v. Staley Oil Co., 1942, 138 Tex. 198, 158 S.W.2d 293.

For purposes of judgment the case involving the plaintiffs' cause of action against the bonding companies in the nature of a Bill of Review, first filed in the County Court of Young County, is severed from their case involving title to real estate.

The Summary Judgment granted in favor of the bonding companies and against plaintiffs is affirmed, and costs therein accrued adjudged against plaintiffs.

Judgment dismissing plaintiffs' cause of action in the nature of trespass to try title as against all defendants other than the bonding companies is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs accrued incident to the appeal of said case are adjudged against said defendants.