**J.B. LATHEM, Appellant,**

v.

**H.L. RICHEY, Appellee.**

**No. 05–87–01313–CV.**

Court of Appeals of Texas,
Dallas.

May 18, 1989.

Rehearing Denied July 7, 1989.

B. Prater Monning, III, Joseph J. Mastrogiovanni, Jr., Dallas, for appellant.

Woodrow M. Roark, Tyler, for appellee.

Before ENOCH, C.J., and ONION [1] and BISSETT [2], JJ.

BISSETT, Justice (Retired).

J.B. Lathem, plaintiff, appeals from a summary judgment rendered against him in favor of H.L. Richey, defendant. We affirm.

Lathem filed suit against Richey on May 7, 1976, for reformation of a general warranty deed which was executed by Lathem and his wife on February 1, 1972, whereby they conveyed five tracts of land, comprising about 503 acres, to Richey. Lathem alleged in his original petition that: (1) on December 28, 1971, he and Richey entered into a contract of sale for the 503 acres, which contract contained a 100–acre mineral reservation to him for life; and (2) on February 1, 1972, he conveyed the land to Richey, "but by reason of a mutual mistake, or scrivener's error," the mineral reservation was omitted from the deed. Copies of the contract of sale and deed were attached to the petition as exhibits. The attached copy of the contract contained the following provisions:

> Grantor is to receive a 100 acre mineral interest in the herein described property for his life and at his death all of the minerals reserved herein together with

---

1. The Honorable John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment.

2. The Honorable Gerald T. Bissett, Justice, Retired, Court of Appeals, Thirteenth District of Texas, at Corpus Christi, sitting by assignment.

all minerals owned by J.B. Lathem and all minerals reserved by J.B. Lathem were mineral reservations or leases heretofore executed upon the death of J.B. Lathem shall become the property of grantee, H.L. Richey.

The above provision was "pasted on" the face of the contract, a printed form.

Lathem filed his third amended original petition on October 2, 1986 (more than ten years after the filing of his original petition). Copies of the contract of sale and deed were attached to the petition. He again alleged that the deed should be reformed because of the omission of the 100-acre mineral reservation due to mutual mistake or scrivener's error. In the alternative, he alleged that: (1) such mistake "was the result of a mistake by plaintiff," and Richey knew of the omission and that the deed did not conform to the written contract of sale; (2) Richey represented to him that the deed was accurate and for a period of over four years led him to believe that the deed "was in fact an accurate embodiment of the contract between the parties"; (3) Richey, by his representations and the intention to deprive him of his "contracted-for mineral reservation," committed "a fraud" upon him; and (4) he "discovered the mistake in or about November 1975."

Richey answered by general denial and plea that the several causes of action asserted by Lathem in his third amended original petition were barred, as a matter of law, by the four-year statute of limitations. On August 27, 1987, Richey filed a motion for summary judgment asserting that Lathem's causes of action, if any he had, were barred by the four-year statute of limitations, and in the alternative, should the trial court hold that the causes of action were not barred by limitations, then he was entitled to summary judgment for the reason that Lathem failed to produce any summary judgment evidence in support of the causes of action asserted by him. The motion for summary judgment was controverted by Lathem. Summary judgment in favor of Richey and against Lathem was signed on October 8, 1987. The trial judge did not state any grounds in the judgment for the granting of summary judgment to Richey.

Lathem presents two points of error. First, he contends that a genuine issue of material fact exists as to when he discovered the mistake in the deed. The point cannot be sustained. He admitted in his third amended original petition that he discovered the mistake "in or about November, 1975." Therefore, there is no genuine issue as to material fact as to when he discovered the mistake. Second, he claims that his causes of action for fraud and unilateral mistake arose out of the same transaction or occurrence as the causes of action for mutual mistake or scrivener's error asserted by him in his original petition, and, therefore, are not barred by limitations.

We first consider Richey's contention that Lathem's alleged cause of action for reformation based upon mutual mistake, scrivener's error, or unilateral mistake accrued more than four years prior to the commencement of this suit, and, consequently, was barred by the four-year statute of limitations. Next, we will consider the alleged causes of action for reformation based on fraud.

Richey, in his deposition and affidavit, testified as follows: (1) the contract of sale and the deed were prepared by Lathem's attorney at the insistence of Lathem; (2) the contract of sale was executed by the parties in the office of Lathem's attorney on December 28, 1971, and at that time there was not any language in the contract as to any mineral reservation to Lathem; (3) in prior negotiations, neither of the parties agreed to any reservation of minerals; (4) the deed was signed and the transaction was closed in the office of Lathem's attorney; and (6) Richey was never approached by Lathem after the closing of the transaction concerning any mineral reservation, and he was never aware of any alleged mistakes prior to the filing of this suit.

Lathem, in response to Richey's motion for summary judgment, argues that the affidavits of himself, his wife, and his attorneys established that the omission of the 100-acre mineral reservation was due to a

mutual mistake. He further says that his controverting summary judgment evidence rebuts the presumption that he, as grantor, had immediate knowledge of a mutual mistake, and that limitations on his cause of action for reformation based on mutual mistake did not begin to run until November 1975, when he actually discovered the mistake; consequently, his suit was timely filed. We disagree.

Mrs. Lathem, in her affidavit attached to Lathem's response to the motion for summary judgment, testified: (1) she was present when the contract of sale was signed; (2) she looked over the contract before Lathem signed it and called his attention to the fact that the contract did not contain the 100–acre mineral reservation; (3) Gordon Wynne (Lathem's attorney) then had his typist paste the mineral reservation to the contract; (4) Richey was present and agreed to the addition of the pasted-on mineral reservation to the contract of sale; (5) in February 1972, "Buck" Wynne, a law partner of Gordon Wynne, told Lathem that "he would handle the papers" for them (Mr. and Mrs. Lathem) because Gordon Wynne was not in the office that day; (6) she and her husband "hurriedly read through the warranty deed and failed to realize that it did not have the 100–acre mineral deed reservation on it"; and (7) she did not find out about the omission until Lathem tried to sell the mineral interest in 1975.

Lathem, in his affidavit, testified: (1) the original contract consisted of a printed form and two "paste-ons," one comprising the description of the land and the other containing the 100–acre mineral reservation; (2) by "paste-on," he meant "typewritten text" that was actually on separate sheets of paper which were pasted onto the printed form; (3) the 100–acre mineral reservation was agreed to by Richey; (4) the "paste-on" mineral reservation was pasted on the printed form before it was signed by either of the parties; (5) the contract of sale was prepared by Gordon Wynne, Lathem's attorney; (6) Buck (B.J. Wynne) told him that in preparing the deed he was filling in for Gordon Wynne who was ill; (7) he assumed that the contract of sale

contained the 100–acre mineral reservation to him; (8) he did not become aware that the mineral reservation had been omitted from the deed until November 1975, when he attempted to sell part of the mineral interest to a third party; (9) he believed at all times prior to November 1975 that the deed did contain the mineral reservation because he received delay rentals on the property each year; and (10) Richey never challenged or objected to his receipt of the delay rentals.

Gordon Wynne, who was deceased at the time of the hearing on Richey's motion for summary judgment, and B.J. (Buck) Wynne, in a joint affidavit, testified: (1) sometime prior to December 28, 1971, Lathem and Richey came to their law office and advised Gordon Wynne that they had agreed upon a contract of sale whereby Lathem was to sell certain lands in Van Zandt County to Richey upon certain terms, and that Lathem was to reserve a 100–acre mineral interest in the lands for life and at his death all of the mineral reserves would become the property of Richey, the grantee; (2) "a copy of this contract" was therefore executed by Lathem and Richey; and (3) B.J. Wynne, who prepared the deed of conveyance from Lathem to Richey, stated in his affidavit:

[A]nd in doing so had his secretary to simply take the title commitment [from the Van Zandt County Abstract Company] and to copy therefrom all of the field notes and all of the reservations and exceptions made therein, but such reservations and exceptions did not include the mineral reservation in accordance with the Contract therefore made by J.B. Lathem and H.L. Richey and this was not discovered until long since after the instruments had been executed and delivered and the matter closed.

Richey, in his Interrogatory No. 6, asked Lathem: "State whether you ever received any delay rental charges, and from whom, and for how much between the years 1971 and 1976 and thereafter." Lathem answered: "Received delay rentals in years 1972–1975 in the amounts of $101.00. Conoco paid 1975 delay rentals. I am unsure who

paid before 1975." In Interrogatory No. 7, Lathem was asked: "In connection with Interrogatory No. 6, state the dates of each delay rental check and the amount thereof." Lathem answered: "August 6, 1976—$101.00."

A suit for the reformation of a deed is governed by the four-year statute of limitations, and a suit that is not filed within four years after the right to reformation has accrued is barred by limitations. TEX.CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1986), *formerly* TEX.REV.CIV.STAT. ANN. art. 5529 (1958) (repealed 1986). *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (1959).

■ Concerning reformation of deeds, the relative position of the parties may determine the time and point at which the statute of limitations begins to run. The general rule of law in Texas is that in a suit for reformation of a deed due to mutual mistake of the grantee and grantor, limitations do not begin to run until the mistake is discovered, or should have been discovered by the exercise of due diligence by a person of ordinary care and prudence. *Sullivan v. Barnett*, 471 S.W.2d 39, 46 (Tex.1971). However, it is also settled law that a distinction exists under the four-year statute of limitations, based on whether the party seeking to reform the deed by correcting the mutual mistake is the grantor or grantee. If the person seeking reformation is the grantor, as is the case here, then he is charged as a matter of law with knowledge of the contents of his deed from the date of its execution and limitations, absent fraud, begins to run against his suit for reformation to correct the mistake in the deed from such date. *Sullivan*, 471 S.W.2d at 45; *Davis v. Andrews*, 361 S.W.2d 419 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.); *Chisholm v. Hipes*, 552 S.W.2d 519 (Tex.Civ.App.—Amarillo 1977, no writ); *Hendes v. Gale*, 376 S.W.2d 922 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.); *La Neve v. Hinkson*, 271 S.W.2d 467 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); *Kahanek v. Kahanek*, 192 S.W.2d 174 (Tex.Civ.App.—Galveston 1946, no writ); *Kennedy v. Brown*, 113 S.W.2d 1018 (Tex.Civ.App.—Amarillo 1938, writ dism'd).

The presumption that a grantor has immediate knowledge of a mistake in a deed is, however, rebuttable, and there are various circumstances which will excuse a delay in the grantor's discovery of the mistakes. The Supreme Court of Texas, in *Sullivan*, 471 S.W.2d 39, and in *McClung v. Lawrence*, 430 S.W.2d 179 (Tex.1968), has cited numerous cases demonstrating situations in which reformation was permitted at the request of a grantor where the mistake was not discovered until more than four years had elapsed after the date the deed was executed by the grantor. *See also Brown v. Havara*, 593 S.W.2d 939 (Tex.1980). We do not deem it necessary to discuss the several cases cited in *Sullivan*, *McClung* and *Brown*. None of the circumstances present in these cases are present in the instant case.

The burden of adducing evidence on a question of limitations in a summary judgment case is set out in *Birdwell v. American Bonding Co.*, 337 S.W.2d 120 (Tex.Civ. App.—Fort Worth 1960, writ ref'd n.r.e.), as follows:

> [A] defendant is entitled to prevail in his motion for summary judgment based upon demonstration that the claim is barred by the affirmative defense of limitation in the absence of plaintiff's ability to explain and excuse his delay by discharging his correlative burden (shifted to him as the result of the proof by the defendant) of specifying some evidence which would change the result otherwise undoubtedly achieved by the defendant as the moving party.

*Birdwell*, 337 S.W.2d at 129.

In the instant case, Lathem (plaintiff) had the burden of offering summary judgment evidence to raise a fact issue which would excuse the delay in filing this action for reformation, since it has been conclusively shown that the action was filed more than four years after February 1, 1972, when the deed was executed.

In the case at bar, it is undisputed that Lathem's attorney prepared both the contract of sale and that Lathem read the

deed, although "hurriedly," before he executed it. The deed was recorded in the deed records of Van Zandt County. Richey had nothing to do with the preparation of either the contract of sale or the deed. There is no summary judgment evidence which shows that the land conveyed by the deed comprised any part of the Lathem's homestead or that either Lathem or his wife remained in possession of any part of the land. There is no summary judgment evidence that the delay of Lathem in discovering that the deed did not contain the 100–acre mineral reservation to him for life was due to something that Richey said or did which lulled Lathem into a sense of feeling secure with reference to the alleged omissions of the mineral reservation. The rights of innocent purchasers for value are not involved in this case. There is neither contention nor summary judgment evidence that either Lathem or Richey were mistaken as to the legal effects of the deed. No exception to the general rule, above-stated, exists in this case.

■ The mistake in the deed, if there was a mistake, was not a mutual mistake of the parties. It was the mistake of Lathem himself. He had ample time to learn that the deed did not contain the mineral reservation. Nothing prevented him from discovering the omission before he executed the deed. A unilateral mistake alone is not a ground for reformation of a deed. *RGS, Carbon Recovery, Inc. v. Dorchester Enhanced Recovery, Co.*, 700 S.W.2d 635, 640 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Lathem, under the summary judgment evidence, was charged with knowledge at the time he executed the deed that the deed did not contain the 100–acre mineral reservation to him for life; consequently, limitation began to run against him on February 1, 1972, when the deed was signed by him. Since suit was not filed until May 7, 1976, more than four years after the deed was executed, Lathem's suit for reformation of the deed because of mutual mistake, unilateral mis-take, or mistake of his attorney was barred by limitations.

Next, we decide whether Lathem's suit for reformation of the deed because of fraud (alleged for the first time in his third amended petition) was barred by the four-year statute of limitations. Lathem argues that the cause of action based on fraud was not barred because it arose out of the same transaction or occurrence as the causes of action alleged in his original petition. On the other hand, Richey argues that he was entitled to summary judgment because the cause of action alleged in the amended petition constituted a new, distinct, and separate cause of action from those alleged in the original petition; therefore, the cause of action for fraud is barred by limitations.

Actions to reform a deed procured by fraud must be brought within four years after the defrauded party discovered, or by the exercise of reasonable diligence should have discovered, the fraud. *Carminati v. Fenoglio*, 267 S.W.2d 449 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.).

Article 5539b of the Texas Revised Civil Statutes, in relevant part, provided:

> Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence.

TEX.REV.CIV.STAT.ANN. art. 5539b (Vernon 1958).[3]

Section 16.068 of the Texas Civil Practice and Remedies Code, enacted in 1985, which superceded article 5539b, reads:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or de-

---

**3.** Enacted in 1931, repealed in 1985 and now codified as Section 16.068 of the TEX.CIV.

PRAC. & REM.CODE ANN. (Vernon 1986).

fense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

 When an amended petition sets up a new, different and distinct cause of action from that asserted in the previous petitions, the assertion of the new cause of action does not relate back to the time when the original suit was commenced, and, therefore, the statute of limitations as to the new cause of action has not been tolled. *Dearing v. Lawrence,* 156 S.W.2d 1019, 1021 (Tex.Civ.App.—Texarkana 1941, writ ref'd). However, where a plaintiff filed a suit *before* the cause of the action alleged in his original petition is barred by limitations, he may later amend and assert new and additional causes of action arising out of the same transaction or occurrence, in which case the new and additional causes of action, even though filed more than four years after suit was filed, will not be barred by limitations. *Bradley v. Etessam,* 703 S.W.2d 237, 241 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Ordinarily a suit, not *a cause of action,* is filed. *Webb v. Allen,* 15 Tex.Civ.App. 605, 609, 40 S.W. 342, 343 (1897, no writ); *see also Ex parte Towles,* 48 Tex. 413, 433 (1877).

The test, under both article 5539b and section 16.068, to determine whether an amended pleading relates back to the original pleading for the purpose of tolling the statute of limitations, is two-pronged. First, the cause of action asserted in the original pleading must *not* have been barred by limitations when the original pleading was filed, and second, the amended pleading which changes the facts or grounds of liability or defense must not be wholly based on a new, distinct or different transaction or occurrence. *Leonard v. Texaco, Inc.,* 422 S.W.2d 160, 163 (Tex. 1967); *Stone v. Brown,* 621 S.W.2d 182,

184 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *Hastings v. Houston Shell and Concrete,* 596 S.W.2d 142, 144 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

In the present case, the doctrine of "relation back" does not come into play because the causes of action alleged by Lathem in his original petition, filed on May 7, 1976, were "subject to a plea of limitations" on that date. For that reason, the cause of action based on fraud in his amended petition, filed on October 2, 1986, more than four years after his original petition was filed and more than four years after the fraud was discovered, was barred by limitations, irrespective of whether the amended petition was wholly based upon and grew out of a new, distinct or different transaction and occurrence.

We have carefully considered both points of error which have been presented in this appeal. Both are overruled. Richey's request for damages because of a frivolous appeal is denied.

The judgment of the trial court is affirmed.