Jo Ann **TIPPIT**, Appellant,

v.

Archie Jack **TIPPIT**, Appellee.

No. 10–93–015–CV.

Court of Appeals of Texas,
Waco.

Nov. 24, 1993.

Virgil E. Bain, Waco, for appellant.

Damon L. Reed, Vance Dunnam & James R. Dunnam, Dunnam & Dunnam, L.L.P., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Jo Ann Tippit appeals a take-nothing judgment in a suit to collect $48,570 due on a promissory note executed by her former husband, Jack Tippit, before their divorce. She also appeals a take-nothing judgment on a fraud claim involving the distribution of $20,780 from a trust created by her parents.

On July 5, 1979, Jack borrowed $48,570 from Jo Ann's parents, James and Goldie Mullins. On January 31, 1981, the promissory note was renegotiated to be payable upon the death of the second parent-in-law. Furthermore, Jack and the Mullins agreed that payment of the note may be made from "the proceeds of the amount due to Jo Ann from the trust" created by the Mullins on January 29, 1981. The trust agreement, which terminated upon the death of the second parent, provided:

> If [the Tippits] shall still be indebted to [the Mullins] at the time of the termination of these trusts, then the Trustee shall withhold that portion of each trust estate which is to be distributed to Jo Ann Mullins Tippit ... until such promissory note is collected or otherwise satisfied. At the option of Jo Ann Mullins Tippit, the promissory note may be deemed paid if properly credited to the amount she is entitled to under this Article.

Mr. Mullins died on September 5, 1981. Mrs. Mullins died on October 18, 1984. The note, which had not been paid, was received by the trustee of the Mullins trust on March 25, 1986. On October 14, 1986, Charles Jones, the trust officer for the bank trustee, mailed a letter to Jack's divorce attorney, with a copy to Jo Ann's attorney, informing him that:

> ... This trust agreement provides that if this promissory note is still outstanding at the time of the termination of this trust, that we, as Trustee, may deem this note paid if properly credited to the amount that Mrs. Tippit would be entitled to receive from the trust at termination. Please be advised that this amount has been so credited at this point.

Jack and Jo Ann Tippit were divorced on October 20, 1986, before the trust assets were distributed. The December 1986 trust distribution agreement, executed by all the beneficiaries including Jo Ann, listed the note as an asset distributed to Jo Ann. She then sued Jack for payment of the note. At trial, the jury found that the trustee had paid the note.

Jo Ann also sued Jack for fraud, alleging that he had misused $20,780 distributed by the trust to the Tippits in 1981. After Mr. Mullins died, but before Mrs. Mullins' death, the beneficiaries agreed among themselves that the Tippits should be able to withdraw up to $21,000 from the trust to modify their home, thereby providing living quarters for Mrs. Mullins. Jack received a check for $20,780 on December 29, 1981, endorsed both his and Jo Ann's name on the check, and deposited the money in the Tippits' joint checking account. No work was done on the house, however. The jury found that Jack fraudulently obtained $20,780 from the trust on December 29, 1981.

### The Promissory Note

■ In point one Jo Ann contends that the court erred in granting Jack's motion for a take-nothing judgment in her suit to collect on the promissory note because, as a matter of law, she was entitled to collect on the note. We must affirm the judgment of the trial court if it is correct on any theory of law

applicable to the case.[1]  As an affirmative defense, Jack pleaded that the Tippits' Agreed Decree of Divorce was res judicata of Jo Ann's suit to collect on the promissory note.  In Jo Ann's First Amended Original Counterclaim for Divorce, Jo Ann alleged:

> [Jack] borrowed money from [Jo Ann's] parents to start a business.  The amount borrowed was approximately $48,570 plus interest.  At the time the business was sold, there existed over $60,000 to pay back the money to [Jo Ann's] parents, yet [Jack] refused and spent the money on other matters.  All the while, [Jack] knew that if the money was not paid back to [Jo Ann's] parents, that it would be taken out of her separate property inheritance which has in fact been done.  [Jo Ann] seeks reimbursement to her separate property estate of such amounts from [Jack].

The Agreed Decree of Divorce recites that "all matters in controversy, including questions of fact and of law, were submitted to the Court," and that the "Court finds the following [division of assets] is just and right, having due regard for the rights of each party."  Among the property awarded to Jo Ann by the Agreed Decree of Divorce was the piece of real property used to secure the original 1979 promissory note.  The Agreed Decree of Divorce also assigned to Jack "all debts incurred by [Jack] since November 1, 1981."  The original promissory note, however, was executed on July 5, 1979, and renegotiated on January 31, 1981.  Finally, the decree recited "that all relief requested in this cause and not expressly granted herein be and is hereby denied."

Res judicata may be invoked to bar further proceedings when the following prerequisites exist: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both suits.[2]

The prior divorce decree was rendered by the district court of Hunt County, a court of competent jurisdiction; the Agreed Decree of Divorce was a final judgment on the merits; Jack Tippit and Jo Ann Tippit are the parties in both the prior divorce and the current suit to collect on the promissory note; and Jo Ann sought recovery on the note in both suits.  The Agreed Decree of Divorce either took her right to recover on the note into consideration when distributing the Tippits' assets and liabilities, or it expressly denied her right to recover on the note.  As a result, Jo Ann's claim related to the promissory note is barred by res judicata.[3]  Accordingly, we overrule point of error one.

Because we have found that Jo Ann's suit to collect on the promissory note is barred by res judicata, we need not address points two, three, and four, by which Jo Ann challenges the legal and factual sufficiency of the evidence to support the jury's finding that the note had been paid.

### The Fraud Claim

■  In points of error five and six Jo Ann argues that the court erred in granting Jack's motion for a take-nothing judgment on the fraud claim because, as a beneficiary of the trust, she had a viable cause of action for fraud against him.  As an affirmative defense, Jack pleaded that Jo Ann's fraud claim was barred by the statute of limitations.

■  Fraud claims are governed by a four-year statute of limitations.[4]  According to section 16.068 of the Texas Civil Practice and Remedies Code, if a filed pleading relates to a cause of action that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different

---

**1.**  *See Schley v. Structural Metals, Inc.,* 595 S.W.2d 572, 584 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.).

**2.**  *Sutherland v. Cobern,* 843 S.W.2d 127, 130 (Tex.App.—Texarkana 1992, writ denied).

**3.**  *See also Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628–31 (Tex.1992).

**4.**  *Williams v. Khalaf,* 802 S.W.2d 651, 657 (Tex. 1990).

transaction or occurrence.[5] To determine whether a cause of action asserted in an amended petition relates back to the original filing date, a two-pronged test must be applied.[6] First, the cause of action asserted in the original pleading must not have been barred by limitations when the original pleading was filed, and second, the amended pleading that changes the facts or grounds of liability or defense must not be wholly based on a new, distinct, or different transaction or occurrence.[7]

Jo Ann filed her original petition on October 17, 1988, just within the four-year statute of limitations to collect on the promissory note that was payable on October 18, 1984. In her original petition, however, the only transaction she mentioned was the promissory note; and she alleged only that Jack owed her the amount due on the note. Jo Ann filed her amended petition on April 20, 1990. This would normally cause the statute of limitations for the claim in the amended petition to toll as of her original filing date in 1988. But Jo Ann's amendment alleged a new cause of action, fraud, involving a different sum of money, $20,780. This money was distributed to the Tippits by the trustee of the Mullins trust, not loaned to them by the Mullins. The Tippits received this money in 1981, two years after the original promissory note was executed. In fact, the money for the house renovations was in no way connected to the proceeds of the loan, except that the Tippits benefited from both. The distribution of $20,780 from the trust was, therefore, a separate transaction from the promissory note executed by Jack. As a result, the fraud claim does not relate back to the filing of Jo Ann's original petition so as to toll the statute of limitations on October 17, 1988.

The record reflects that Jack received a check for $20,780 on December 29, 1981, and the jury found, in question one, that he fraudulently obtained $20,780 from the trust on December 29, 1981. Because Jack pleaded, proved, and secured a favorable finding that the cause of action accrued on December 29, 1981, he met his initial burden to sustain his plea of limitations.[8] Jo Ann raised the discovery rule by a plea in confession and avoidance. Because Jack met his initial burden to sustain his affirmative defense, however, Jo Ann had the burden to prove and secure favorable findings on the discovery rule.[9]

In question two the jury found that Jo Ann did not discover, or could not have discovered by the exercise of reasonable diligence, any fraud prior to October 18, 1984. The amended petition asserting the fraud cause of action, however, was filed more than four years after October 18, 1984, the only date for which a discovery rule finding was requested. Because Jo Ann failed to secure a discovery-rule finding sufficient to avoid Jack's plea of limitations, we overrule points of error five and six.

We affirm the trial court's judgment.

5. Tex.Civ.Prac. & Rem.Code Ann. § 16.068 (Vernon 1986).

6. *Lathem v. Richey,* 772 S.W.2d 249, 255 (Tex. App.—Dallas 1989, writ denied).

7. *Id.*

8. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988).

9. *See id.* at 518.